**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

UBER PROMOTIONS, INC.,
a Florida corporation,

       Plaintiff,                         CASE NO: 15-CV-00206-MW-GRJ

vs.

UBER TECHNOLOGIES, INC.,
a Delaware corporation,

       Defendant.

_____/

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF LAW

       Plaintiff, UBER PROMOTIONS, INC. ("Plaintiff"), pursuant to Fed.R.Civ.P. 65(a) and Rule 7.1, S.D.Fla.L.R. moves for a preliminary injunction against Defendant, UBER TECHNOLOGIES, INC. ("Defendant") enjoining it from using variations of the trademark **UBER** in the State of Florida, and submits the following Memorandum of Law and Declarations of Michael Farzad, Scott Smiley, and Daniel Devine.

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS…………………………………………….. 2

TABLE OF AUTHORITIES…………………………………………. 3

I.   INTRODUCTION………………………………………….. 6

II.   STATEMENT OF FACTS………………………………….. 7

A. Plaintiff's Business, Ownership, and Use of UBER Trademarks……… 7

B. Defendant's Business and Use of the Uber Trademarks……………….. 8

III.   LEGAL ARGUMENT……………………………………… 12

A. Legal Standard for Granting Preliminary Injunction…………………… 12

B. There is a Substantial Likelihood Plaintiff Will Prevail on the Merits of a Least One of Its Claims Against Defendant……………………………… 13

1.   Common Law Trademark Infringement, Common Law Unfair Competition and False Designation of Origin, False Endorsement and Unfair Competition Under Section 43 Of The Lanham Act……………………………………………………………… 13

(a) Plaintiff Owns Valid Trademarks…………………………… 13

(b) Defendant's Use of Plaintiff's Mark Is Likely to Cause Confusion……………………………………………………………. 16

(1) Strength of the Infringed Mark……………………………….. 18

(2) Similarity of the Marks……………………………………….. 20

(3) Similarity of the Products/Services……………………………… 21

(4) Similarity of Channels of Trade and Customers………………… 23

(5) Similarity of Advertising Media……………………………… 24

(6) Defendant's Intent Can Be Inferred from the Circumstances…………… 24

(7) Actual Confusion…………………………………………… 25

1. Florida Statutory Trademark Infringement and Florida Common   27
   Law Trademark Infringement and Unfair Competition………….

2. Defendant's Affirmative Defenses………………………………   29

C.   Plaintiff Is Suffering Irreparable Injury………………………………   35

D.   The Injury to Plaintiff Far Outweighs Any Potential Harm To   36
Defendant………………………………………………………………….

E.   The Public Interest Will Be Served by Issuance of an Injunction……   38

IV. CONCLUSION…………………………………………………………   39

## TABLE OF AUTHORITIES

*AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1538 (11th Cir.1986)…………………...17, 25

*American Diabetes Ass'n, Inc.* v. *National Diabetes Ass'n*, 533 F. Supp. 16, 21 (E.D. Pa. 1981)……………………………………………………................................................36

*American Express Co. v. American Express Limousine Service Ltd*., 772 F. Supp. 729 (E.D.N.Y. 1991)………………………………………………………………………23

*American United Life Insurance Co. v. American United Insurance Co.,* 731 F. Supp. 480, 488 (S.D. Fla. 1990)……………………………………………………………...14

*Anderson v. Upper Keys Bus. Group, Inc*., 61 So. 3d 1162, 1167-1168 (Fla 3rd DCA 2011)………………………………………………………………………………..28

*Angel Flight of Georgia, Inc. v. Angel Flight America, Inc*., 522 F.3d 1200, 1208 (11th Cir. 2008)………………………………………………………………………..32

*Anheuser-Busch, Inc., v. A-B Distributors, Inc*., 910 F. Supp. 587, 592 (M.D. Fla. 1995)………………………………………………………………………………..17

*Armco, Inc. v. Armco Burglar Alarm Co*., 693 F.2d 1155, 1162 (5th Cir.1982)………...33

*Bauer Lamp Co. v. Shaffer,* 941 F.2d 1165, (11th Cir. 1991)………………………….27

*Bellsouth Adver. & Publishing* v. *Real Color Pages,* 792 F. Supp. 775, 785 (M.D. Fla. 1991)………………………………………………………………………………..38

*Big O Tire Dealers, Inc. v. Goodyear Tire and Rubber Co*., 408 F. Supp. 1219, (D.Colo.1976)…………………………………………………………………………18

*Capital Films Corp. v. Charles Fries Productions, Inc*., 628 F.2d 387, 393 (5th Cir.1980)…………………………………………………………………………………17

*Citibank N.A., v. Citibanc Group, Inc., et al*, 1982 WL 52144 at *29 (N.D. Ala. 1982)…………………………………………………………………………………31, 32

*Clayton* v. *Howard Johnson Franchise Sys.,* 730 F. Supp. 1553, 1561-62 (M.D. Fla. 1988)………………………………………………………………………………..37

*Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1517 (11th Cir.1984)………………………31

*Contemporary Restaurants Concepts. Ltd. v. Las Tapas-Jacksonville, Inc.,* 753 F. Supp. 1560, 1563 (M.D. Fla. 1991)…………………………………………………………14

*Cross Country Home Services, Inc. v. Home Service USA Corp.*, No. 08-61456-CIV, 2010 WL 331752 at *10 (S.D. Fla. Jan. 20, 2010)………………………………………33

*Dieter v. B &H Industries of Southwest Florida, Inc.,* 880 F.2d 322, 326 (11th Cir. 1989)………………………………………………………………………………14,17

*Dreamworks Production Group, Inc. v. SKG Studios dba DreamWorks SKG,* 142 F. 3d 1127, n.5 (9th Cir. 1998)…………………………………………………………………19

*E. RemyMartin & Co. v. Shaw-Ross Int'l. Imports, Inc.,* 756 F.2d 1525, 1530, n. 13 (11th Cir. 1985)………………………………………………………………...13, 21, 35

*E.R. Squibb & Sons, Inc.* v. *Princeton Pharmaceuticals, Inc.,* 1990 WL 272707 (S.D. Fla. 1990)………………………………………………………………………………..27

*Freedom Savings & Loan Association* v. *Way,* 757 F.2d 1176 (11th Cir. 1983) .…20, 26

*Georgia Television Co.* v. *TV Newsclips of Atlanta, Inc.,* 718 F. Supp. 939, 949 (N.D. Ga. 1989)…………………………………………………………………………………37

*Gift of Learning Foundation, Inc. v. TGC, Inc*., 329 F.3d 792, 802 (11th Cir. 2003)…..28

*Great S. Bank v. First S. Bank*, 625 So. 2d 463, 467 (Fla. 1993)………………………….26, 29

*Gridiron.com v. National Football League Player's Ass'n*, 106 F. Supp. 2d 1309, 1316 (S.D. Fla. 2000)……………………………………………………………………….....36

*Inmuno Vital, Inc. v. Golden Sun, Inc*., 49 F. Supp. 2d 1344, 1351-1352 (S.D. Fla. 1997)…………………………………………………………………………………..17

*In re Jeep Corp*., 1984 WL 63039, (T.T.A.B. 1984)………………………………………….23

*Jellibeans. Inc. v. Skating Clubs of Georgia, Inc.,* 1981 WL 40564, 176, *aff'd., 716* F.2d 833, 843 (11th Cir. 1983)………………………………………………………………..25

*J & J Snack Foods Corp. v. McDonald's Corp*., 932 F.2d 1460, 1462-1464 (Fed. Cir. 1991)………………………………………………………………………………..…22

*John H. Harland Company v. Clarke Checks. Inc.*, 711 F.2d 966, 975 (11th Cir. 1983)..19

*Kason Indus., Inc. v. Component Hardware Group, Inc.* 120 F.3d 1199, 1206 (11th Cir.1997)…………………………………………………………………………….32, 35

*Michael Caruso & Co. v. Estefan Enter., Inc.,* 994 F. Supp. 1454 (S.D. Fla. 1998)…….19

*McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998)………………...35

*Pipers v. Holiday Inns, Inc*., 1981 WL 48158, (N.D. Cal. 1981)………………………..16

*Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1201-1203 (11th Cir. 2001)………………………………………………………………………………..…22

*Roadway Express, Inc. v. Roadway Motor Plazas, Inc.,* 1990 WL 120945 (N.D.N.Y. 1990)………………………………………………………………………………..…23

*Rothman v. Greyhound Corp*., 175 F.2d 893 (4th Cir. 1949)…………………………....23

*Safeway Stores v. Safeway Discount Drugs. Inc.,* 675 F.2d 1160 (11th Cir. 1982)….19, 21

*Sands, Taylor & Wood Co. v. The Quaker Oats Co*., 978 F.2d 947, 961 (7th Cir. 1992)…………………………………………………………………………………..26

*Sears, Roebuck & Co. v. Johnson*, 219 F.2d 590 (3d Cir. 1955)………………………..23

*Stuart J. Kaufman, M.D. & Associates, P.A. v. Bausch & Lomb Inc*., Slip Copy, 2013 WL 6154166……………………………………………………………………………18, 26

*SunAmerica Corp. v. Sun Life Assur. Co. of Canada*, 77 F.3d 1325, 1329-1330 (11th Cir. 1996)………………………………………………………………………………..32

*Tally-Ho, Inc. v. Coast Community College Dist*. 889 F.2d 1018, 1026 (11th Cir. 1989)………………………………………………………………………14, 15, 29

*Valmor Products Co. v. Standard Products Corp*., 464 F.2d 200, 204 (1st Cir.1972)….30

*The Cascades of Levitt Homes,* 1997 WL 588848, 1928 (S.D. Fla. 1997)………………39

*Varitronics Systems, Inc. v. Merlin Equipment Co., Inc.,* 682 F. Supp. 1203, 1207 (S.D. Fla. 1988)……………………………………………………………………………...25

*Vision Center v. Opticks, Inc.,* 596 F.2d 111, 114, FN 8 (5th Cir. 1979)………………..16

*Wall v. Rolls-Royce of America, Inc*., 4 F.2d 333 (3d Cir. 1925)………………………..23

*W.E. Kautenberg Co. v. Ekco Products Co.*, 251 F.2d 628, 631 (C.C.P.A. 1958)……....22

## I.   INTRODUCTION

Plaintiff provides transportation to the public and is the owner of various common law marks containing "**UBER**" and a Florida Trademark Registration for the mark **UBER PROMOTIONS** for transportation services. Years after Plaintiff started conducting business, Defendant formed its business entity and began using similar variations of the term **UBER** in connection with directly competing services.

Weeks after being served with process in this case, and after having extensive discussions with Plaintiff's counsel, instead of ceasing use of the marks, or at least curtailing its use, Defendant launched further expansions of its business under the marks **UBEREVENTS**, **UBERPOOL,** and **UBERBOAT**. Defendants launched a massive advertising campaign for these new services which directly compete with, and are identical to Plaintiff's core services, namely, offering private transportation for passengers attending parties and sporting and entertainment events. Extensive actual confusion is taking place, with increasing frequency. Meanwhile, Defendant continues to directly solicit Plaintiff's customers, in Florida, including Defendant's home city, and appears to be unwilling to cease or curtail this conduct.

## II. STATEMENT OF FACTS

### A. <u>Plaintiff's Business, Ownership, and Use of UBER Trademarks</u>

Plaintiff, a privately held company, was incorporated in 2006. *Decl.Farzad,* *¶4.* Plaintiff provides passenger transportation services, including vehicle charter services, in various cities in Florida, for transporting passengers within Florida, and from Florida to and from other states. *Id.* at ¶¶4-10. Plaintiff built its business and brand by originally focusing on transporting passengers to and from the University of Florida, and other parts of Alachua County, to Gator football away games, and other sporting events at or near colleges and universities in Florida and throughout the Southeastern Conference ("SEC"), and to and from Florida

destinations such as Ocala Poker & Jai Alai, nightclubs and concerts. *Id.* at *¶¶4, 15-17.*

Plaintiff has used the trademarks **UBER**, **ÜBER**, **UBER PROMOTIONS** and **ÜBER PROMOTIONS** ("Plaintiff's Marks") in Florida at least since June 26, 2006, and in interstate commerce at least since May 12, 2007 to identify its company and/or business as the source of its passenger transportation, vehicle charter, travel, tour, promotional, event planning, graphic and web design, print photography, modelling and talent agency, private venue rental, and related services ("Plaintiff's Services"). *Id.* at ¶¶4-17. At least as early as 2007, Plaintiff has used the internet domain name www.uberpromotions.com and, since 2008, its Facebook profile, through which it advertises and sells Plaintiff's Services including, without limitation, its passenger transportation, charter, tour and travel services. *Id.* at *¶¶7, 11, 14.* Plaintiff's Marks are prominently displayed in advertising its services, as a tradename and corporate name, on business cards, invoices, on the side of its vehicles used to transport passengers, on the internet, in print advertisements, and in other promotional and marketing materials. *Id.* at *¶¶11-14.*

### B. Defendant's Business and Use of the Uber Trademarks

Defendant operates a website located at www.uber.com and a mobile application, which are accessible to users throughout the United States and now in

the State of Florida in connection with the mark **UBER**. *Answer ¶3*. Defendant was incorporated under the laws of the State of Delaware on July 16, 2010 under the name "Uber Technologies, Inc.," and claims to have used several variations of the mark **UBER** in connection with services which include, or are related to passenger transportation ("Defendant's Services") since October 28, 2010. *Answer ¶¶19-21; Decl.Farzad, ¶23*.

On or about November 5, 2010, Defendant applied for registration of the mark **UBER** with the United States Patent and Trademark Office ("USPTO"), Application Serial No. 85170655. *Answer ¶¶27, 67*. On or about June 14, 2011, the USPTO issued Defendant Registration Number 3977893 directed to the mark **UBER** for use in connection with computer software in International Class 009; telecommunications services in International Class 038; providing websites in International Class 39; and providing use of online non-downloadable software in International Class 42. *Id*. Defendant did not register or even seek the registration of the UBER mark in any classes that cover or describe the actual provision of transportation.

In 2014, Defendant began service to select cities in the State of Florida, and then, specifically, into Gainesville, Florida, in August of 2014. *Answer ¶25; Decl.Farzad, ¶¶23-26*. Soon thereafter, Plaintiff started receiving calls from customers seeking Defendant's services.

In late 2014, Defendant began using the tagline "Uber Promotions" with the social media service Twitter, in connection with Defendant's Services in interstate commerce. *Decl.Farzad, ¶¶23, 39.* In late 2014 or early 2015, Defendant began using the tagline "Uber Promotions" with the social media service Instagram, in connection with Defendant's Services in interstate commerce. *Id.*

On December 2, 2014, Defendant applied for registration of the composite mark **UBER** (and design) with the USPTO, Application Serial No. 86469371, for use in connection with mobile application software in International Class 9. This application is still pending. *Answer ¶¶28, 72.*

Plaintiff sent two cease and desist letters to Defendant. Defendant entered the Gainesville market after being put on actual notice of Plaintiff's trademark rights. *Decl.Farzad, ¶23-26, 39.* In the past few weeks, and after twice being put on actual notice of Plaintiff's rights, and after service of the instant lawsuit, Defendant launched a new marketing campaign in Florida, called "UberEvents," a party planning/transportation service that directly competes with Plaintiff. Defendant further introduced "UberBOAT," "UberPOOL" and "Southern Showdown" expanding its transportation services to collective transportation by car, bus and now boat. The new campaigns now also include services related to and target-marketed to customers traveling to sporting events such as the SEC

championship game, entertainment events, and for alcoholic beverage promotions, in direct competition with Plaintiff. *Decl.Smiley, ¶¶5-8; Decl.Farzad, ¶¶25-28.*

Plaintiff believes, due to the similarity between Plaintiff's Marks and Defendant's Marks, and the respective goods and services, prospective consumers are likely to be deceived, mistaken, or confused as to the source or origin of Defendant's Services. The distinctiveness of Plaintiff's Marks are being diluted, and/or Defendant has caused the likelihood of initial interest confusion and reverse confusion. *Decl.Farzad, ¶¶20-32.* Actual forward consumer confusion, initial interest confusion, and/or reverse confusion has already occurred on numerous occasions. *Id.* at *¶¶24-30.* Plaintiff has received over 200 recent phone calls from people who mistakenly called Plaintiff but were seeking to contact Defendant. *Id.* at *¶¶24-25.* Other instances were received by email. *Id.* at *¶26.* Plaintiff receives numerous calls and/or emails each week from the public looking for or complaining about Defendant and/or its services. *Id.* at *¶24-26.* Plaintiff believes its customers are mistakenly contacting Defendant and thereby depriving Plaintiff of business opportunities.

This confusion has escalated recently as Defendant has entered into and expanded its marketing to the State of Florida. *Decl.Farzad, ¶¶19-33.* Since then, Plaintiff's vehicles have been turned away from airports and theme parks and prevented from reaching their intended destinations. *Id.* at *¶30.* They have been

detained and threatened by law enforcement because they bear the word "UBER" on the side, thereby preventing Plaintiff from providing the services to which it has obligated itself to its consumers. *Id.* In the past few months, Defendant has begun to overrun Plaintiff's established business with its massive advertising and target marketing in identical media, and for virtually identical services. *Id.* at *¶¶19-33.*

Plaintiff made several requests to Defendant to stop the activities described above starting in April 2014 and, most recently, in the last few weeks. Most of the acts, described above, are continuing, to this day. *Decl.Smiley, ¶¶5-8*; *Decl.Farzad, ¶34.* After extensive attempts to resolve the matter, the parties are still in disagreement as to whether Defendant's use of the marks should be enjoined. *Id.*; *Decl.Smiley, ¶¶5-8*; *Decl.Devine, ¶¶5-7.*

### III.   LEGAL ARGUMENT

### A.   <u>Legal Standard for Granting Preliminary Injunction</u>

A district court must assess the following factors in determining whether to grant a motion for preliminary injunction: 1) Whether there is a substantial likelihood the Plaintiff will prevail on the merits; 2) Whether there is a substantial threat of irreparable injury if the injunctive relief is not granted; 3) Whether the threatened injury outweighs the threatened harm the injunction may cause Defendant; and 4) Whether granting the preliminary injunction will disserve the

public interest. *E. RemyMartin & Co. v. Shaw-Ross Int'l. Imports, Inc.,* 756 F.2d

1525, 1530, n. 13 (11th Cir. 1985).

**B.    There is a Substantial Likelihood Plaintiff Will Prevail on the Merits of a Least One of Its Claims Against Defendant**

**1.    Common Law Trademark Infringement, Common Law Unfair Competition and False Designation of Origin, False Endorsement and Unfair Competition Under Section 43 Of The Lanham Act**

Count I of the Complaint seeks relief under § 43(a) of the Lanham Act, 15

U.S.C. § 1125(a), which provides in relevant part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin...which--(A) is likely to cause confusion, or to mistake, or to deceive as to affiliation, connection, or association of such person with another person, or as to origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

*Id.*

The elements necessary to establish trademark infringement are virtually the

same as those required to prove unfair competition under the Lanham Act.

*Contemporary Restaurants Concepts. Ltd. v. Las Tapas-Jacksonville, Inc.,* 753 F.

Supp. 1560, 1563 (M.D. Fla. 1991) citing *American United Life Insurance Co. v.

American United Insurance Co.,* 731 F. Supp. 480, 488 (S.D. Fla. 1990).

Accordingly, the Plaintiff must show: (1) it is the owner of a valid mark; and (2)

the Defendant's use of the contested mark is likely to cause confusion. *Dieter v. B &H Industries of Southwest Florida, Inc.,* 880 F.2d 322, 326 (11th Cir. 1989). However, some courts have stated the elements of common law unfair competition in more detail. *See Tally-Ho, Inc. v. Coast Community College Dist*. 889 F.2d 1018, 1026 (11th Cir. 1989). None of the claims require ownership of a federal trademark registration by the Plaintiff. *Id.* at 797. In the present case, there is ample evidence Plaintiff satisfies all requirements and is therefore likely to prevail on the merits.

### (a) Plaintiff Owns Valid Trademarks

At common law, ownership of a trademark is determined by priority of use, i.e., first to use in a particular geographic market. *Tally-Ho, Inc.* at 1022-1023 (11th Cir. 1989). Plaintiff began using Plaintiff's Marks in connection with passenger transportation services in Florida in 2006 and has continued to provide transportation under Plaintiff's Marks ever since.   *See* Section II.A., *supra*. Defendant's business entity was not even formed until July 16, 2010. Defendant did not begin using the mark in any form of commerce until its limited launch of its transportation software app in late 2010 in the San Francisco Bay area where it is headquartered. Defendant did not begin providing any services in or from Florida until 2014. Defendant did not even file its Application by Foreign Corporation for Authorization to Transact Business in Florida until October 30,

14

2013. Defendant is not expected to contest Plaintiff's priority of use, at least in the Gainesville, Florida area and its vicinity.

Defendant pleads that it is entitled to a rebuttable presumption of priority of use because it was first to obtain a federal trademark registration for **UBER** in 2010, for computer software for coordinating transportation services. This registration, if valid, confers a presumption of priority, nationwide in effect, in connection with the goods and/or services specified in the registration against anyone except a company such as Plaintiff who was first to continuously use it and has not abandoned the mark. *See*, 15 U.S.C. §§ 1115(b)(5), 1057(a)(1);[1] *See also*, *Pipers v. Holiday Inns, Inc*., 1981 WL 48158, (N.D. Cal. 1981), aff'd, 220 U.S.P.Q. 360 (9th Cir. 1982) (statutory presumption held rebutted, court noting the presumption does not override the priority of use rules of the common law). Where a junior user obtains a federal registration, and the senior user does not, the senior user is entitled to carve out an exclusive geographic territory where the senior user was first to use the mark. *Vision Center v. Opticks, Inc.,* 596 F.2d 111, 114, FN 8 (5th Cir. 1979)("It is clear that Opticks' federal registration is not a defense in this case since, as the district court found, the partnership was a prior user of the term "Vision Center" in the New Orleans market area").

---

[1] 15 U.S.C. § 1057(a) mentions two other exceptions from the presumption of nationwide priority upon which Plaintiff is not relying for purposes of this motion.

## (b) Defendant's Use of Plaintiff's Mark Is Likely to Cause Confusion

The Eleventh Circuit has identified a non-exclusive set of factors to determine likelihood of confusion among conflicting marks, including: (a) the type or strength of the Plaintiff's mark; (b) the similarity of the marks; (c) the similarity of the goods or services; (d) the identity of retail outlets (trade channels) and purchasers; (d) similarity of advertising media used; (f) defendant's intent in selecting its mark; and (g) actual confusion. *Dieter,* at 326. Rather than simply determining whether a majority of these factors indicate a likelihood of confusion, a court must "evaluate the weight to be accorded the individual factors and then make its ultimate decision." *AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1538 (11th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987). An analysis of fewer than all seven factors may support, or negate, a finding of likelihood of confusion. *Anheuser-Busch, Inc., v. A-B Distributors, Inc*., 910 F. Supp. 587, 592 (M.D. Fla. 1995). In the Eleventh Circuit, the type of mark and evidence of actual confusion are the most important factors. *Dieter,* at 326.

One specific type of confusion that is occurring, and is likely to continue to occur, is known as "reverse confusion."  This Court has described this form of confusion succinctly:

> The usual trademark infringement case involves a claim by a plaintiff with a substantial investment in a well-established trademark. The plaintiff would then seek recovery for the loss

> of income resulting from a second user attempting to trade on the goodwill associated with that established mark by suggesting to the consuming public that his product comes from the same origin as the plaintiff's product. Golden Sun's counterclaim, however, involves the doctrine of "reverse confusion." Under this doctrine, the infringer's use of the original user's mark creates sufficient confusion that the relevant market does not know who created the original product.

*Inmuno Vital, Inc. v. Golden Sun, Inc*., 49 F. Supp. 2d 1344, 1351-1352 (S.D. Fla. 1997) (citing *Capital Films Corp. v. Charles Fries Productions, Inc*., 628 F.2d 387, 393 (5th Cir.1980)). Under *Capital Films*, the reverse confusion doctrine is presumed to apply in the Eleventh Circuit.  *Id.* at 1352. The court in *Capital Films* relied upon the landmark case of *Big O Tire Dealers, Inc. v. Goodyear Tire and Rubber Co*., 408 F. Supp. 1219, (D.Colo.1976), modified on other grounds, 561 F.2d 1365 (10th Cir. 1977), cert. dismissed, 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978).

In *Goodyear*, the defendant Goodyear, the party with the more prominent advertising and consumer recognition, opposed application of the reverse confusion theory, arguing liability could not be imposed without a showing Goodyear intended to trade on the goodwill of Big O or to palm off Goodyear products as being those of Big O. 561 F.2d at 1372.  In affirming the district court, the Tenth Circuit adopted the rationale and language of the trial judge's response to Goodyear's argument:

> The logical consequence of accepting Goodyear's position would be the immunization from unfair competition liability of a company with a well-established trade name and with the economic power to advertise extensively for a product name taken from a competitor.  If the law is to limit recovery to passing off, anyone with adequate size and resources can adopt any trademark and develop a new meaning for that trademark as identification of the second user's products. The activities of Goodyear in this case are unquestionably unfair competition through an improper use of a trademark and that must be actionable.

408 F. Supp. at 1236.  See also, *Stuart J. Kaufman, M.D. & Associates, P.A. v. Bausch & Lomb Inc.*, Slip Copy, 2013 WL 6154166 at *6 (Here, Plaintiff is alleging "reverse confusion," which occurs when a much larger defendant "saturates the market with a trademark similar or identical to that of a smaller, senior user"); 4 *McCarthy on Trademarks and Unfair Competition* § 23:10 (4th ed.) ("Large Company Rolls Over Small Senior User").

### (1) Strength of the Infringed Mark

This Circuit has identified factors to be considered in assessing the strength of the infringed mark. *John H. Harland Company v. Clarke Checks. Inc.*, 711 F.2d 966, 975 (11th Cir. 1983) (citing *Safeway Stores v. Safeway Discount Drugs. Inc.,* 675 F.2d 1160 (11th Cir. 1982)). These factors include: (1) categorization of the mark along the spectrum including, in order of strength with the first category being the strongest: a) arbitrary and fanciful; b) suggestive; c) descriptive; and d) generic; and (2) the extent of third party use of the mark. *Id.* This factor requires

courts to consider the Plaintiff's mark as a whole, not merely its component parts in a vacuum. *Michael Caruso & Co. v. Estefan Enter., Inc.,* 994 F. Supp. 1454 (S.D. Fla. 1998).

In cases involving reverse confusion, it is the strength of the junior user's mark, in this case, the Defendant, that is relevant, not the strength of the Plaintiff's mark. 4 *McCarthy on Trademarks and Unfair Competition* § 23:10 (4th ed.) (citing *Dreamworks Production, Inc. v. SKG Studio*, 142 F.3d 1127, n.5, *Dreamworks Production Group, Inc. v. SKG Studios dba DreamWorks SKG,* 142 F. 3d 1127, n.5 (9th Cir. 1998)). In reverse confusion cases, confusion is logically considered more likely when the defendant's (junior user's) mark and consumer recognition is strong.

The dominant portion of the respective marks is **UBER**, which can be described as arbitrary or fanciful. There is nothing inherent in the marks **UBER** or **ÜBER** that describes or relates to the services. A fanciful or arbitrary mark is generally considered strong and is given "protection over a wide range of related products and variations in appearance of the mark." *Id.* at 974 (citing 1 J.T. McCarthy, *Trademarks & Unfair Competition* § 11:24, at 398 (1973)). Under theories of both forward confusion and reverse confusion, this factor weighs decidedly in favor of finding likelihood of confusion.

### (2) Similarity of the Marks

Plaintiff uses **UBER**, **ÜBER**, **UBER PROMOTIONS**, and **ÜBER PROMOTIONS**, among others similar marks. Defendant uses **UBER**, **UBER TECHNOLOGIES**, and **UBER PROMOTIONS**, among other similar marks. Defendant's Marks are highly similar to and even identical to some of Plaintiff's Marks. An evaluation of the similarity of marks for the purpose of determining whether likelihood of confusion exists requires consideration of each mark in its entirety. *Freedom Savings & Loan Association* v. *Way,* 757 F.2d 1176 (11th Cir. 1983) *cert. denied* 474 U.S. 845 (1985). Thus, a court must consider the overall impression created by the marks, including a comparison of the appearance, sound and meaning of the marks, as well as the manner in which they are displayed. *E. Remy Martin & Co. v. Shaw-Rose Int'l Imp.,* 756 F.2d 1525, 1530 n.22 (11th Cir. 1985). Significantly, however, when comparing two marks, courts accord great weight to those features of a mark which are dominant. *Safeway Stores, Inc.,* 675 F.2d at 1165.

A simple comparison of the dominant portions of Defendant's Marks to the Plaintiff's Marks reveals the marks are extremely similar to one another. As to some, they are identical with the exception of highly descriptive or generic terms used to describe or identify the products, e.g., "promotions," "technologies" and "events." These generic and descriptive terms do little, if anything, to distinguish

the marks.  *See* DE 15, Answer, at p. 11 ("To the extent Uber Technologies has used the term "promotions" and variations thereof in connection with its UBER® trademark, such as in the phrase "Uber promotions," Uber Technologies has used the term in good faith to fairly and accurately describe a marketing effort relating to its services.") The dominant features of the respective marks are the term "UBER." However, Defendant has even openly, notoriously, and repeatedly used the term "promotions" together with the mark **UBER**, resulting in an exact match to that of Plaintiff's Mark, **UBER PROMOTIONS**, but for the *umlaut* over the "U."

Even if the infringing marks used by the Defendants are not confusingly similar to any of Plaintiff's individual marks, it can still be held to be infringing if they are confusingly similar to the distinguishing feature of Plaintiff's family of **UBER** marks, i.e., the term "Uber." *See J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1462-1464 (Fed. Cir. 1991). All of the marks create the impression that the parties have some affiliation or association. This factor should weigh heavily in favor of a finding of a likelihood of confusion.

### (3) Similarity of the Products/Services

Defendant might argue Plaintiffs are not direct competitors because Defendant's services are largely sold and accessed from a software app. Defendant's software, however, is used by the public to instantly order ground

transportation—the exact service Plaintiff provides. Notwithstanding that fact, goods and services do not have to exactly match for a likelihood of confusion to be found. *See, e.g.*, *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1201-1203 (11th Cir. 2001) (where goods of the parties are not in direct competition, likelihood of confusion is determined by looking at whether the goods are related); *W.E. Kautenberg Co. v. Ekco Products Co.*, 251 F.2d 628, 631 (C.C.P.A. 1958) ("It is in the area of noncompeting goods that the often discussed concept of the 'natural expansion of business' arises . . ."). For example, the following marks were found to be non-competing, but confusingly similar:

| | |
|---|---|
| ALLSTATE<br>(auto insurance) | ALLSTATE<br>(driving school)[2] |
| AMERICAN EXPRESS<br>(travel related services) | AMERICAN EXPRESS<br>(limousine service)[3] |
| GREYHOUND<br>(bus line) | GREYHOUND<br>(taxicabs)[4] |
| LAREDO<br>(tires) | LAREDO<br>(vehicles)[5] |
| ROADWAY<br>(trucking line) | ROADWAY<br>(truck stops)[6] |
| ROLLS-ROYCE<br>(autos) | ROLLS-ROYCE<br>(radio tubes)[7] |

---

[2] *Sears, Roebuck & Co. v. Johnson*, 219 F.2d 590 (3d Cir. 1955).

[3] *American Express Co. v. American Express Limousine Service Ltd*., 772 F. Supp. 729 (E.D.N.Y. 1991) (summary judgment for plaintiff).

[4] *Rothman v. Greyhound Corp*., 175 F.2d 893 (4th Cir. 1949).

[5] *In re Jeep Corp*., 1984 WL 63039, (T.T.A.B. 1984).

[6] *Roadway Express, Inc. v. Roadway Motor Plazas, Inc.,* 1990 WL 120945 (N.D.N.Y. 1990).

[7] *Wall v. Rolls-Royce of America, Inc*., 4 F.2d 333 (3d Cir. 1925).

In the instant case however, the parties are *directly* competing. Plaintiff has a long history of providing vehicle charter and passenger transportation services, especially in, and from the State of Florida. In addition, the development of a software app is within a reasonable scope of expansion of Plaintiff's business. Defendant has even launched its UberEVENTS, UberBOAT, UberPOOL and Southern Showdown services after being served with this lawsuit, and is direct email marketing to Florida, including to Plaintiff's customers. This factor should weigh in favor of a finding of a likelihood of confusion, especially in light of the reverse confusion being caused. *See Multi Time Machine*, *supra*.

### (4) Similarity of Channels of Trade and Customers

Both Plaintiff and Defendant sell their services directly to the public through websites among other means. The customers of both Plaintiff and Defendant are any member of the public that requests transportation. In fact, Plaintiff has received over 200 calls from potential customers apparently seeking Defendant that Plaintiff is fully equipped and immediately capable of picking up and transporting to their desired destination. Plaintiff lacks sufficient information at this time to determine the number of Plaintiff's customers or potential customers that have inadvertently contacted Defendant.  This factor weighs decidedly in favor of finding likelihood of confusion.

### (5) Similarity of Advertising Media

Defendant and Plaintiff both utilize or rely upon websites, search engines and social media, including Facebook, Twitter, and Instagram to advertise and promote their passenger transportation and vehicle charter services. Thus, this factor weighs decidedly in favor of finding likelihood of confusion.

### (6) Defendant's Intent Can Be Inferred from the Circumstances

If a defendant adopted the mark with the intent of deriving benefit from the reputation of a plaintiff, that fact alone may support the inference there is confusing similarity. *Harland, supra* at 976. Because direct evidence of an infringer's subjective intent is difficult to obtain, the Eleventh Circuit has recognized aspects of an infringer's conduct that support an inference of such unlawful intent, including the infringer's knowledge of a Plaintiff and the copying of plaintiff's product with which the mark is used. *Id.* The fact Defendant just recently adopted new variations of the **UBER** mark—a name which looks, sounds and creates the same commercial impression as Plaintiff's—and offers directly competing services, is sufficient to infer Defendant's intent to cause confusion. *Jellibeans. Inc. v. Skating Clubs of Georgia, Inc.,* 1981 WL 40564, 176, *aff'd., 716* F.2d 833, 843 (11th Cir. 1983) (court may infer intent from facts and circumstances in evidence); *Ambrit v. Kraft. Inc.,* 812 F.2d 1531, 15431543 (11th Cir. 1986 ("There is nothing unusual about a finding of intent based on

circumstantial evidence"). A finding of intent is based largely upon a party's prior knowledge of the allegedly infringed mark. *Varitronics Systems, Inc. v. Merlin Equipment Co., Inc.,* 682 F. Supp. 1203, 1207 (S.D. Fla. 1988).

Months after receiving Plaintiff's "cease-and-desist" letter in April 2014, Defendant began service to Plaintiff's home city of Gainesville.  After being served with the instant lawsuit, Defendant expanded its offerings in Gainesville and elsewhere in Florida to include UberEVENTS, UberBOAT, and UberPOOL. Notwithstanding the above, the intent of the Defendant is essentially irrelevant when considering reverse confusion because the defendants in such cases are, by definition, <u>not</u> palming off or otherwise attempting to create confusion as to the source of the plaintiffs' products. *See*, *Stuart J. Kaufman, M.D. & Associates, P.A. v. Bausch & Lomb Inc.*, Slip Copy, 2013 WL 6154166, *9 (citing *Sands, Taylor & Wood Co. v. The Quaker Oats Co*., 978 F.2d 947, 961 (7th Cir. 1992)). This factor weighs in favor of a finding of likelihood of confusion, at least as to the variations of the mark recently introduced into Florida.

### (7) Actual Confusion

Actual confusion by a few customers is evidence of likelihood of confusion by many customers. *Freedom Sav. and Loan Ass'n v. Way*, 757 F.2d 1176, 1185 (11th Cir.), cert. denied, 474 U.S. 845, 106 S.Ct. 134, 88 L.Ed.2d 110 (1985).

Therefore, a plaintiff usually will not have to prove more than a few incidents of actual confusion. *Id.*

The actual confusion of which Plaintiff is aware in this case is extraordinary, and continues to this day, sometimes on a daily basis. Over 200 documented phone messages were left on Plaintiff's answering service in the past year. This confusion continues despite Plaintiff's efforts to dispel consumer confusion and its routine disclaimers of affiliation with Defendant which have now unfortunately become part of Plaintiff's regular operating procedures. The Eleventh Circuit considers such evidence one of the most significant indicators of a likelihood of confusion. *Dieter* at 326.

Defendant has not hesitated to state in the public records that confusion will occur when two companies are providing transportation under the **UBER** mark. Notice of Opposition at ¶ 11, *Uber Techs., Inc. v. Hays*, Ser. No. 86/364,719 (T.T.A.B. Feb. 12, 2015),

http://ttabvue.uspto.gov/ttabvue/v?pno=86364719&pty=EXT&eno=3 (wherein Defendant Uber attested that "the fame and reputation of Uber is of such a nature that a connection with Uber would be presumed when Applicant uses the ÜBER mark in connection with his [transportation] services.")

Notwithstanding the above, actual confusion is not even necessary to establish likelihood of confusion. *Bauer Lamp Co. v. Shaffer,* 941 F.2d 1165, (11th

Cir. 1991) *citing E. Remy Martin* & *Co.* v. *Shaw-Ross International Imports,* 755 F.2d 1525, 1529-30 (11th Cir. 1985). Often times, actions are brought before actual confusion has materialized, and courts in such circumstances have not hesitated to enter an injunction. See, *e.g.*, *E.R. Squibb* & *Sons, Inc.* v. *Princeton Pharmaceuticals, Inc.,* 1990 WL 272707 (S.D. Fla. 1990). Therefore, this factor weighs decidedly in favor of finding likelihood of confusion.

1. **Florida Statutory Trademark Infringement and Florida Common Law Trademark Infringement and Unfair Competition**

Plaintiff also pled claims for trademark infringement and unfair competition under common law and under sections 495.131-141 of the Florida Statutes. The elements have been held to be essentially the same as those recognized by the Court of Appeals for the Eleventh Circuit for the federal claims. *See, Gift of Learning Foundation, Inc. v. TGC, Inc*., 329 F.3d 792, 802 (11th Cir. 2003) [internal citations omitted]; *See also, Anderson v. Upper Keys Bus. Group, Inc*., 61 So. 3d 1162, 1167-1168 (Fla 3rd DCA 2011) (internal citations omitted)).

Section 495.181, Florida Statutes, provides:

> It is the intent of the Legislature that, in construing this chapter, due consideration and great weight be given to the interpretations of the federal courts relating to comparable provisions of the Trademark Act of 1946, as amended (15 U.S.C. s. 1051 et seq.) [the Lanham Act].

*Id.*;[8] *See also*, *Great S. Bank* at 466-467.

Florida's Registration and Protection of Trademarks Act states that:

> Any owner of a mark registered under this chapter may proceed by suit to enjoin the manufacture, use, display, or sale of any counterfeits or imitations thereof and any court of competent jurisdiction <u>may grant injunctions</u> to restrain such manufacture, use, display or sale as may be by the said court deemed just and reasonable.

§ 495.141, *Fla. Stat.* [Emphasis added].

Section 495.061 of the Florida Registration and Protection of Trademarks Act states:

> Any certificate of registration issued by the [Florida Department of State] under the provisions [of Chapter 495] or a copy thereof duly certified by the department shall be admissible in evidence as competent and sufficient proof of the registration of such mark in any action or judicial proceedings in any court of this state, and shall be *prima facie* evidence of the validity of the registration, registrant's ownership of the mark, and of registrant's exclusive right to use the mark in this state on or in connection with the goods or services specified in the certificate subject to any conditions and limitations stated therein.

§ 495.061(2); *Fla.Stat. Tally-ho, Inc.* at 1023-1024. Plaintiff has a Certificate of Florida Trademark Registration for the mark **ÜBER PROMOTIONS** for "passenger transportation services, vehicle charter services" in Class 39. Even Plaintiff's corporate name, itself is afforded protection against confusing uses on the same principles that apply to protection of trademarks. *Great S. Bank v. First S.*

---

[8] Section 495.181 became effective on October 1, 1990. <u>See</u> ch. 90-222, 8, Laws of Fla.

*Bank*, 625 So. 2d 463, 467 (Fla. 1993). Plaintiff is therefore entitled to a presumption that: 1) its Florida Trademark Registration for the mark **ÜBER PROMOTIONS** is valid; 2) Plaintiff owns the mark, and 3) Plaintiff has the exclusive right to use the mark in the State of Florida on, or in connection with the goods or services specified in the certificate except to the extent such conflicts with the Lanham Act.

The Declaration of Plaintiff's co-owner, and the exhibits thereto demonstrate these facts are more than just a presumption. They are likely to be conclusively proved. For the same reasons Plaintiff is likely to prevail on the merits of its trademark infringement claim, it is likely to succeed on the merits of its Florida common law unfair competition claim.

### 2. Defendant's Affirmative Defenses

The only actual affirmative defenses Defendant asserted, not discussed above, which could possibly relate to injunctive relief are laches and estoppel.[9] Defendant bases its laches defense on constructive notice resulting from its November 5, 2010 trademark registration, but which did not issue until ***June 14, 2011***. *See* 15 U.S.C. §1072 (constructive notice applies as of the date of registration). Secondly, as more fully explained above, constructive notice applies only as to the goods and services recited in the registration, which, here, are

---

[9] Third and Fourth Affirmative Defenses, Answer.

software and website related and do not include or recite actual vehicles or actual transportation of persons. *Id.*

Notwithstanding, Plaintiff found no basis in the law of this jurisdiction to base a laches defense on the legal fiction of "constructive notice" created by a registration owned by the infringer. In fact, cases outside this circuit have directly held otherwise. *See*, e.g., *Valmor Products Co. v. Standard Products Corp*., 464 F.2d 200, 204 (1st Cir.1972) (plaintiff cannot be charged with knowledge solely on the basis of defendant's registration where no claim was made that lack of knowledge was willful or negligent). At least for purposes of this motion, Plaintiff's claim is based on preventing Defendant from using Plaintiff's Marks in Florida, **a state it did not enter until 2014**. Furthermore, the full extent of Defendant's wrongful acts could not possibly have been appreciated at the time Plaintiff sent its April 2014 demand because Defendant did not enter Gainesville until nearly five months after Plaintiff's letter.  Further, Defendant, at that time had not launched the services UberEVENTS, UberBOAT, UberPOOL, or "Southern Showdown."

Laches is based on a failure to act for an unreasonable period of time after knowledge of a conflicting use of a similar mark. *Citibank N.A., v. Citibanc Group, Inc., et al*, 1982 WL 52144 at *29 (N.D. Ala. 1982). Estoppel is based on the inequity of requiring a party to stop the further use of a mark when the claimant

has previously either acquiesced in or has failed to timely object to its use. *Id.* The period of alleged delay for purposes of laches is calculated from the date a claimant knew or should have known all elements of its claim have been met. *Id*. To succeed with its allegation that a Lanham Act trademark action is barred by laches, the defendant must show: (1) a delay in asserting a right or claim; (2) the delay was not excusable and; (3) there was undue prejudice to the party against whom the claim is asserted. 15 U.S.C. § 1051 *et seq*. The test for laches is flexible, requiring a careful examination of both the delay and the prejudice caused by that delay. *See Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1517 (11th Cir.1984). In addition, the court must consider the public's interest in the trademark as a definite designation of a single source of the goods. *Id.* In the Eleventh Circuit a claim for trademark infringement is presumed timely if filed within four (4) years. § 95.11, *Fla. Stat*.

In *Citibank*, the district court rejected the laches defense even though the defendant's conduct was known to the claimant years prior to the initiation of the litigation, and two years after a name change by the defendant which led to a new variation of the infringement. *Id.* at *29-30. In the case of *Angel Flight of Georgia, Inc. v. Angel Flight America, Inc*., 522 F.3d 1200, 1208 (11th Cir. 2008) the court found that injunctive relief is permissible despite the affirmative defenses of laches and acquiescence where confusion between the marks was inevitable and stating

31

that "[e]ven in cases where these defenses [laches and acquiescence] bar a suit for damages due to inequity to the infringer, the Court may still grant injunctive relief to avoid 'putting a judicial stamp of approval on conduct which will confuse consumer[s]'"). *Id.*; See also *SunAmerica Corp. v. Sun Life Assur. Co. of Canada*, 77 F.3d 1325, 1329-1330 (11th Cir. 1996) (Estoppel by acquiescence revived claim upon showing of "inevitable confusion").

Further, laches generally will not bar injunctive relief against an intentional infringer. *Kason Indus, Inc*., 120 F.3d at 1207. The McCarthy treatise states that "the defense of estoppel by laches is only rarely applied to bar a permanent injunction after a strong case of likely confusion has been proven." *See*, *McCarthy on Trademarks*, § 31:6 (2004). Moreover, the clock is said to stop for purposes of calculating delay when the defendant is notified of plaintiff's objections. *See Armco, Inc. v. Armco Burglar Alarm Co*., 693 F.2d 1155, 1162 (5th Cir.1982); *Cross Country Home Services, Inc. v. Home Service USA Corp.*, No. 08-61456-CIV, 2010 WL 331752 at *10 (S.D. Fla. Jan. 20, 2010) (refusing to apply laches where the parties were in settlement and acquisition discussions for almost three years).

Although not specifically pled, Defendant apparently bases its estoppel defense on Plaintiff's April 2014 written demand to cease use of Plaintiff's marks. Defendant characterizes the demand as limited to uses only of the terms "UBER"

and "PROMOTIONS" together in the same mark. Defendant pled in its affirmative defenses it was misled, and in reliance thereon "proceeded with its natural expansion plans and use of its UBER trademark….throughout the United States, including the State of Florida and in this judicial district." *See* DE 15, Answer, at p. 13.

The April 2014 letter could have been more artfully drafted. However, examination of the correspondence reveals that it would be unreasonable for Defendant to claim that they were "home free" after simply removing the word "Promotions" from their Twitter heading. *See*, *Decl.Farzad*, **Composite Exh 21**. If Defendant truly believed that all claims were immediately settled and released by their attempt to send an overly narrow, self-executing letter in July 2014, then that is nothing more than a self-serving conclusion. As the court concluded in *Citibank*, *supra*, "[t]his was done in reliance on their own conclusions, not any delay by plaintiff. It was done at their own risk." *Id.* at *31.

The April 2014 letter contained no assent language, no conditions for any settlement, consent or license and is not expressly limited to Defendant's use of the terms "UBER" and "PROMOTIONS" together, although the specific example of Defendant's infringing use cited therein happened to include the use of both terms together in one mark. Defendant's response contains no settlement or release language, and denies any potential confusion, even as to use of the terms together.

Plaintiff's letter specifically claims ownership, goodwill and broad trademark rights in the **UBER PROMOTIONS** mark. The third paragraph of Plaintiff's letter says:

> Accordingly, Uber Promotions demands that your company (1) discontinue the use of the **terms** "Uber Promotions" in connection with Uber Technologies, Inc's marketing and advertising campaigns (2) and undertake in writing that you will not at any time in the future use **any of Uber Promotions name [sic]** in any future marking or advertising campaigns, Twitter Accounts, or apply for registration of **any trademarks/service mark that may be confusingly similar to Uber Promotions**.

*Decl.Farzad*, Exh. 21 [emphasis added]. Defendant continued, and just in the past few weeks launched new, directly competing services under Plaintiff's Marks, and new variations, in Plaintiff's home city and state.

Furthermore, the doctrine of progressive encroachment is relevant to these defenses. *See Kason Indus., Inc. v. Component Hardware Group, Inc.* 120 F.3d 1199, 1206 (11th Cir.1997). "Under this doctrine, where a defendant begins use of a trademark or trade dress in the market, and then directs its marketing or manufacturing efforts such that it is placed more squarely in competition with the plaintiff, the plaintiff's delay is excused." *Id.* at 1205. Under the doctrine of progressive encroachment, "delay is to be measured from the time at which the plaintiff knows or should know she has a provable claim for infringement." *Id.* at 1206.

Defendant's entry into various cities in Florida, including Gainesville, and its very recent launch of UberEvents, UberPOOL, UberBOAT and "Southern Showdown," excuse any delay found, and revive any barred claims under the doctrine of progressive encroachment.

## C.    Plaintiff Is Suffering Irreparable Injury

The existence of a sufficiently strong likelihood of confusion may by itself constitute a showing of substantial threat of irreparable harm. *E. Remy Martin & Co.* v. *Shaw-Ross International Imports, Inc.,* 756 F.2d 1525, 1530 (11th Cir. 1985). "When a plaintiff makes a *prima facie* showing of trademark infringement, irreparable harm is ordinarily presumed." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) [internal citations omitted].  Irreparable harm exists in a trademark case when the moving party "shows that it will lose control over the reputation of its trademark pending trial." *Id.* [internal citations omitted]. Irreparable harm can also be found through loss of advertising revenue and goodwill. *See Gridiron.com v. National Football League Player's Ass'n*, 106 F. Supp. 2d 1309, 1316 (S.D. Fla. 2000) [internal citation omitted]. In *Gridiron.com*, the court found irreparable harm in that goodwill was being damaged by potential and actual conflicts, and that it was being usurped resulting from lost licensing revenues "from potential licenses in an amount that is difficult to ascertain because [the infringer's] website is diverting business away from them." *Id.*

Plaintiff has shown a sufficiently strong likelihood of confusion which would result in the destruction of Plaintiff's goodwill and reputation built up over nearly a decade. Such potential harm cannot be adequately measured or remedied by money damages. *American Diabetes Ass'n, Inc.* v. *National Diabetes Ass'n*, 533 F. Supp. 16, 21 (E.D. Pa. 1981). The harm continues each day the wrongful acts are permitted to continue. Defendant's massive advertising has trampled over Plaintiff, and is causing numerous instances of actual confusion in the marketplace. Since being served with the Complaint in this action, and after significant discussions and other communications between counsel for the parties, Defendant has actually expanded its activities conducted in connection with Plaintiff's Marks, in particular with its launch of its new services which directly compete with Plaintiff's main business activities, which have been at its core since 2006. Defendant is sending direct email solicitations to residents of Florida, including at least one proven instance of Plaintiff's customer base. There is no reason known to Plaintiff to believe that Defendant will cease or curtail its wrongful conduct unless enjoined. At this rate, soon, no one will know Plaintiff is not simply an extension of Defendant and its services.

**D.**   **The Injury to Plaintiff Far Outweighs Any Potential Harm To Defendant**

Although enjoining infringing activities inherently will cause some initial inconvenience to a defendant, such inconvenience is a necessary consequence of

protecting a plaintiff's rights. *Clayton* v. *Howard Johnson Franchise Sys.,* 730 F. Supp. 1553, 1561-62 (M.D. Fla. 1988). A business built on the ill-gotten gains of infringement cannot be condoned, and injunctive relief is warranted, even where it would have a "devastating effect or potential destruction of the defendant's business." *Georgia Television Co.* v. *TV Newsclips of Atlanta, Inc.,* 718 F. Supp. 939, 949 (N.D. Ga. 1989).

Here, Defendant has only recently begun using Plaintiff's Marks in Florida in 2014. Defendant has been previously banned from providing its services in Broward County, Florida, and appears to have the ability to make a few simple changes to its app to shut off service to certain geographic areas, at will, and with ease. Plaintiff is not asking this Court to enjoin Defendant from providing service in or to Florida, just from doing so under the flagship and trademarks that are identical, or confusingly similar with those owned by Plaintiff.

By comparison, Plaintiff has been using various UBER-related marks since 2006, and consumers are being confused almost on a daily basis. Plaintiff's request at this time, is reasonably limited, and focused simply on the State of Florida where the great majority of the confusion has been occurring, and where Plaintiff is undoubtedly the senior user. The effort and expense required of Defendant to stop using the UBER marks in Florida is dwarfed by the relative harm to Plaintiff. Any claim by Defendant regarding the profits they would lose in Florida from

having to use a different name in Florida should fall on deaf ears in light of their junior user status.

The balance of harm clearly favors Plaintiff and supports the limited injunctive relief requested in this motion.

### E.     The Public Interest Will Be Served by Issuance of an Injunction

In a trademark infringement case, the interests of the public are paramount. *Bellsouth Adver. & Publishing* v. *Real Color Pages,* 792 F. Supp. 775, 785 (M.D. Fla. 1991). Thus, when a trademark is said to have been infringed, what is actually infringed, in addition to the right of the trademark owner to control his reputation, is the right of the public to be free of confusion. *Id.* Plaintiff now has an enormous database of voicemails from persons stranded, begging for a call back so they can receive needed transportation.  Some even threaten to drive while intoxicated because they have no other means of transportation. July, 14, 2015 voicemail from anonymous girls. If they called Plaintiff during operating hours or knew Plaintiff was not the Defendant, these possible dangerous scenarios could be avoided.  The public interest, therefore, is best served by eliminating the likelihood of confusion. *The Cascades of Levitt Homes,* 1997 WL 588848, 1928 (S.D. Fla. 1997). In this case, Plaintiff has valid, valuable rights that go back nearly a decade. Furthermore, Plaintiff will establish a likelihood of confusion, and a likelihood of success on at least one of its claims. The public is being deceived into an apparent affiliation

which is false. A preliminary injunction should therefore be entered in the interest of the public.

## IV. CONCLUSION

Based on the foregoing, Plaintiff satisfies each of the requisites for preliminary injunctive relief. Accordingly, Plaintiff respectfully requests that the Court issue the requested injunction in accordance with the terms of Plaintiff's prayer for relief in their Amended Complaint to enjoin Defendant's use of the mark **UBER**, and any similar variation, in connection with its software app, its transportation services, event services and related brand names, in and to the State of Florida and to Florida consumers of Plaintiff's Services or Defendant's Services.

Respectfully submitted,


**SANTUCCI PRIORE, P.L.**
*Attorneys for Plaintiffs*
200 South Andrews Avenue
Museum Plaza, Suite 100
Fort Lauderdale, Florida 33301
Telephone: 954-351-7474
Facsimile: 954-351-7475

*/s/ Joseph V. Priore*
Joseph V. Priore (FBN: 348820)
E-mail: jvp@500law.com
E-mail: docketing@500law.com

**THE CONCEPT LAW GROUP, P.A.**
*Attorneys for Plaintiff*
200 South Andrews Avenue
Museum Plaza, Suite 100
Fort Lauderdale, Florida 33301
Telephone: 754-300-1500
Facsimile: 754-300-1501

*/s/ Scott D. Smiley*
Scott D. Smiley (FBN: 678341)
E-mail: Scott@conceptlaw.com
*/s/ Alexander D. Brown*
Alexander D. Brown (FBN: 752665)
E-mail: Abrown@conceptlaw.com

## CERTIFICATE OF GOOD FAITH CONFERENCE

I HEREBY CERTIFY that, in compliance with Rule 7.1 (B), N.D.Fla.L.R., I, and Plaintiff's co-counsel have conferred on various occasions over the past weeks with Defendant's counsel in a good faith effort to resolve or simplify the issues raised in this Motion, but have been unsuccessful.

By:   */s/ Scott Smiley*
Scott D. Smiley (FBN: 678341)
E-mail: scott@conceptlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 17th day of December, 2015, that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF. Also certify that the foregoing document and the notice of electronic filing is being served on this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:   */s/ Joseph V. Priore*
Joseph V. Priore (FBN: 348820)
E-mail: jvp@500law.com

*Uber Promotions, Inc. v. Uber Technologies, Inc.*
*CASE NO.:* **15-CV-00206-MW-GRJ**

## SERVICE LIST

Ury Fischer, Esq.
E-mail: ljlott@lottfischer.com
Adam Diamond
E-mail: adiamond@lottfischer.com
**LOTT & FISCHER, PL**
355 Alhambra Circle, Suite 1100
Coral Gables, FL 33134-5076
Telephone: (305) 448-7089
Facsimile: (305) 446-6191
*Attorneys for Defendant Uber*
*Technologies*

John W. Crittenden
E-mail: jcrittenden@cooley.com
John Paul Oleksiuk
E-mail: jpo@cooley.com
Chantal Z. Hwang
E-mail: chwang@cooley.com
**COOLEY LLP**
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Phone: (415) 693-2000
Fax: (415) 693-2222
*Pro Hac Vice*
*Attorneys for Defendant Uber*
*Technologies, Inc.*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of N.D.Fla.L.R. 7.1(F).

☒ The brief contains [7,549] words, excluding the parts of the brief exempted by Local Rule 27.1(f).

2.    This brief complies with the typeface requirements of N.D.Fla.L.R. 7.1(F).

☒ The brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2013 version*] in [*Size 14, Times New Roman style*].

By: */s/ Joseph V. Priore*
Joseph V. Priore (FBN: 348820)
E-mail: jvp@500law.com
ATTORNEY FOR PLAINTIFF
DECEMBER 17, 2015