# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# GAINESVILLE DIVISION

CASE NO: 1:15-cv-00206-MW-GRJ

UBER PROMOTIONS, INC.
a Florida corporation,

   Plaintiff,

vs.

UBER TECHNOLOGIES, INC.
a Delaware corporation,

   Defendant.
_____/

**DECLARATION OF RAYMOND OTERO IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

I, Raymond Otero, declare as follows:

**1.** I am a resident of Gainesville, Florida and am a driver approved to provide rides using the online platform operated by Uber Technologies, Inc. ("Uber"), the Defendant in the above-captioned matter. If called as a witness, I could and would competently testify to the following of my own personal knowledge.

**2.** Before I began driving passengers using the Uber platform, I worked in the limousine and luxury transportation and hospitality industries for 19 years. I was employed as a limousine driver and chauffeur with various companies in Florida, specifically in Miami, Naples, and Gainesville, as well as San Antonio, Texas. I had frequently visited my friends living in or near the Gainesville area

since 1998, and eventually decided to make Gainesville my permanent home in 2009, where I currently reside with my wife and two children.

3. I first heard about the Uber platform approximately three or four years ago from a news program. I became more familiar with what the company does when a character on an episode of "Ray Donovan," a Showtime television series, used the Uber mobile app to request a ride.

4. In August of 2014, I learned from Uber's advertising campaign on craigslist.org that Uber was seeking drivers to join its platform in Gainesville. Soon after hearing about this opportunity, I applied to become an Uber driver-partner. I thought I would be able to make good money driving with Uber, and I liked the idea of running my own operation. Another aspect of driving with Uber that appealed to me was that I would not have to contract with multiple limousine and transportation companies in order to fill up my schedule and make a living. In my experience, in the limousine and luxury transportation industry, drivers generally need to be signed up with five to six different companies in order to fill up a weekly schedule. I started driving on the Uber platform in July 2015, after I was able to purchase a new car.

5. I am very happy driving for Uber because it allows me to determine my own schedule and spend more time with my family, while still enabling me to make good money. I choose when I want to make money driving: I turn on the

Uber app on my phone, and it tells me where there are people in the area who need rides. I always dreamed of having my own business and setting my own hours so that I could spend more time with my wife and sons and actually make it to family functions. Driving for Uber has done just that and let me be more involved in my sons' lives. There is a constant demand for drivers, so I can work as much as I want or need to. In the last two months alone I have given about 1,000 rides.

6. I believe that Uber provides a valuable public service to the Gainesville community. For drivers using the Uber platform like me, the flexible schedule allows us to make ends meet or earn extra money as we wish. Drivers can work on their own side-projects or businesses, or tend to other obligations, like family, as they choose. This flexibility did not exist in my previous work as a limousine driver.

7. For passengers, in my experience, the Uber mobile app lets people who don't own a car or are unable to drive safely from one place to another find a ride immediately and conveniently. The Uber platform also gives passengers and drivers accountability. Passengers are able to connect with their drivers and see where their drivers are on a map on their phones and when their drivers are arriving. Passengers and drivers also rate each other, and that encourages everyone to facilitate a good experience for one another.

8. Based on what passengers have told me, I understand that many of my passengers rely on Uber to get to and from work every day. This alleviates their need to pay for a car and the other costly expenses associated with car ownership, like repair and maintenance.

9. Outside of the Gainesville city limits there is no public transportation. Before Uber was introduced to the area, people who needed to leave the city had to rely on their own car or a ride from a friend. There are state parks and recreational areas outside the Gainesville city limits that people can now enjoy thanks to Uber's service, which they would otherwise not be able to get to.

10. I know that Uber has partnered with the University of Florida ("UF") in a program called "UF Safe Rides," which enabled students to obtain safe and reliable transportation at night by offering discounted rides within a certain area near campus. UF's student government gave students a promo code that unlocked the "Safe Rides" option in the Uber mobile app, and using that option students could obtain rides in the campus area at designated hours at a 50% discount. I have personally provided many UF students rides in connection with the "UF Safe Rides" program.

11. Uber has provided people in Gainesville a safe alternative to drinking and driving. I believe that it has increased responsible transportation choices because it is very easy to use and because the rider always knows when his or her

driver is on the way, which is not the case with taxicabs. For the driver, the app's GPS function allows us to know where the rider is physically located, which makes it easier to coordinate pickups.

**12.**   Uber has also provided the elderly with a new transportation option through the Freedom in Motion program, which was introduced to the Gainesville area last year. Freedom in Motion provides senior citizens discounted rides and also gives them tutorials on how to use Uber. So far, I have had the opportunity to give one elderly woman a ride. She needed to go to the post office. I plan to transport many more Freedom in Motion passengers because I think it is important to help the elderly of our community get around.

**13.**   I became aware of Uber Promotions, Inc., the Plaintiff in this case, back in 2011 when I worked for 101 Management Group, a restaurant management company in Gainesville. I was a consultant for restaurants between 2011 and 2012 and one of the restaurants I consulted for used Uber Promotions to manage and promote a weekly "ladies night." In the course of my work for 101 Management Group, I learned that Uber Promotions was an entertainment company, in the business of organizing parties at clubs and in the nightlife scene. I also learned that it was operated by current or recent UF graduates and that it mainly served members of UF fraternities and sororities.

14. Later on, in or about 2013 or 2014, I believe after Uber started operating in Florida, I began seeing buses with the name "Uber Promotions." I am informed by passengers that Uber Promotions rents party buses and transports groups to various fraternity events and parties. Based on what I've heard from passengers, Uber Promotions allows passengers to drink while onboard the party buses.

15. Through speaking with passengers, some of whom are UF students, I understand Uber Promotions has also transported students outside of the Gainesville city limits into the woods for a rave. I know this because I gave some UF students a ride to one of Uber Promotions' designated pick up locations for that event.

16. Uber is a very different kind of service, and serves a different purpose – taking people where they need to go on-demand. Also, Uber's code of conduct – and, I understand, Florida law – prohibits open containers of alcohol in Uber driver-partners' vehicles.

17. Although I was aware of Uber Promotions at the time I applied to drive using the Uber platform, I did not for a moment think the two were related in any way, because they are such different businesses. Uber Promotions is an entertainment business where transportation is incidental to getting people to its

parties, while Uber is an online ridesharing platform that relies on technology to match riders and drivers.

18.    I have never had a rider say anything to me that indicated that he or she thought that Uber and Uber Promotions were part of the same business or affiliated or connected in any way.

19.    I hope to see Uber expand into the entire state of Florida very soon. Uber's presence in Gainesville has helped this community and I believe that Uber can have the same effect in other communities across the state by making it easier to find convenient, affordable, and safe transportation.

20.    If Uber were no longer able to operate in Florida, there would be a serious impact on myself and the community. I would have no income for at least several months while I figured out a new business plan and this would be detrimental to my family's financial situation. Based on my experience, many other driver partners in the Uber network would find themselves in a similar or even worse situation.

21.    There would also be a serious impact on myself and the community if Uber could no longer operate under the name "Uber." I believe that I would make much less money as a driver-partner if Uber changed its name, because there would be no recognition of the new name in the community and no goodwill associated with the new name the way there is with Uber. I am also concerned that

if users had to adopt a new mobile application offered under a different name, that they would be reluctant to do so and there would be too few riders in the network to support me financially. In fact, I would likely have to look elsewhere to supplement my income or find another job altogether.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this ___ day of January, 2016 at Gainesville, Florida

1/8/16
Raymond Otero

Raymond Otero

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 8, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

/s/ Chantal Z. Hwang
Chantal Z. Hwang

### SERVICE LIST

*Uber Promotions, Inc. v. Uber Technologies, Inc.*
*Case No. 1:15-cv-00206-MW-GRJ*

Service via CM/ECF generated Notices of Electronic Filing:

| | |
|---|---|
| Alexander D. Brown | Joseph V. Priore |
| Scott D. Smiley | **Santucci Priore, P.L.** |
| **The Concept Law Group, P.A.** | 200 South Andrews Avenue |
| 200 South Andrews Avenue | Museum Plaza, Suite 100 |
| Museum Plaza, Suite 100 | Ft. Lauderdale, FL  33301 |
| Ft. Lauderdale, FL  33301 | Telephone:  954-351-7474 |
| Telephone:  754-300-1500 | Facsimile:  954-351-7475 |
| Facsimile:  754-300-1501 | E-mail:     jpriore@500law.com |
| E-mail:     Abrown@conceptlaw.com | |
| E-mail:     Scott@conceptlaw.com | *Attorneys for Plaintiff* |
| *Attorneys for Plaintiff* | |